# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMIE D. JARDINE and ERICK DARRINGTON,

Plaintiffs,

v.                                                              Case No. 09-CV-1114

ALFONSO GRAHAM, JAMES HART,
JAYNE HACKBARTH, STEVE LANDREMAN,
ARELY GONNERING, FRED A MELENDEZ,
M. JEANNE HUIBREGTSE, FRAN PAUL,
SHARON WILLIAMS, and RICK RAEMISCH,

Defendants.

# ORDER

The plaintiffs filed a *pro se* action under 42 U.S.C. § 1983 alleging a violation of their civil rights. They were allowed to proceed on an ex post facto claim. Before the court are plaintiffs' motion to compel discovery (Docket #79) and two motions for preliminary relief (Docket ##'s 88, 106). Also pending are motions for summary judgment filed by the defendants and the plaintiffs (Docket ##'s 82, 89).

## 1.    Summary Judgment

### A.    Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.,* 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are

those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### B.    Relevant Undisputed Facts[1]

The plaintiffs in the present suit are Jamie Jardine and Erick Darrington. Plaintiff Jardine was convicted of one count of attempted first degree intentional homicide and four counts of first degree sexual assault. On April 15, 1994, he was

---

[1] The undisputed relevant factual information is taken from the plaintiffs' affidavits, relevant attached exhibits, and the defendants' proposed findings of fact.

sentenced to sixty years in prison, with parole eligibility after fifteen years. He is presently incarcerated at Redgranite Correctional Institution.

Plaintiff Darrington was convicted of two counts of armed robbery and theft and criminal damage. On February 17, 1998, he was sentenced to thirty years in prison, with parole eligibility after seven and a half years. He is presently incarcerated at Fox Lake Correctional Institution.

Under Chapter 304 of the Wisconsin Statutes, parole consideration is based on the following criteria: (1) statutory eligibility; (2) participation in programs; (3) institution adjustment; (4) sufficient time for punishment; (5) adequacy of parole plan; and (6) whether release would be an unreasonable risk to the public. When considering the fourth criteria (sufficient time for punishment), the parole hearing officers look to the following factors: length of sentence; mitigating and aggravating factors; reasons for committing the crime; type of crime; feeling toward the crime and victims; and attitude of district attorney.

Plaintiff Jardine became parole eligible on October 3, 2008. At his parole review, Parole Commissioner James Hart found that Jardine had not served sufficient time for punishment and that he presented an unreasonable risk to the public. He stated that Jardine's conduct had been satisfactory but that he had not satisfactorily participated in programs while incarcerated. Thus, Commissioner Hart recommended that Jardine's parole eligibility date (PED) be deferred for forty-eight months.

Plaintiff Darrington became parole eligible on December 6, 2004. He has had parole reviews on December 6, 2004, November 5, 2007, November 4, 2008, and November 6, 2009. At each of plaintiff Darrington's parole reviews, Commissioner Hart found that Darrington had not served sufficient time for punishment and that he had unsatisfactory program participation. At his most recent review hearing, Commissioner Hart recommended that Darrington's PED be deferred for twelve months.

Pursuant to Wis. Admin. Code PAC § 1.06(2), any deferral of more than twelve months requires approval by the Chair of the Commission. The parole deferral rule in § PAC 1.06(2) was previously found in Wis. Admin. Code § HSS 30.05(2). The policy that is currently in effect governs parole consideration deferrals and hearings, not the policy that was in effect at the time of the inmate's conviction.

## C.    Analysis

The plaintiffs claim that the changes in the parole standards and the policies utilized by parole commissioners since they were sentenced have resulted in a lengthening of their prison terms. According to the plaintiffs, policy directives and other memoranda that did not officially change the parole guidelines in Wisconsin nevertheless removed the discretion regarding discretionary parolees and transformed their sentences into truth-in-sentencing sentences (*i.e.*, meaning that they will not be released until their mandatory release date). Specifically, the plaintiffs argue that the parole officers retroactively applied "post-1999 substantive

parole standards" and "post-1994 changes to Wisconsin's parole laws and policies." (Compl. at Relief Requested (b.)). The plaintiffs have submitted statistics of parole release as evidence. They state that these statistics show an increase in prison sentences and prove that prisoners' "parole applications were unlawfully and arbitrarily rejected owing to Thompson's Policy Directive to hold violent offenders in as long as possible." (Compl. at 18: Exhibit H; Docket #112: Exhibit 2 at 2-3).

The defendants submit that the plaintiffs' claim should be dismissed because the plaintiffs cannot prove that any law has been applied to them retroactively in violation of the Constitution. First, the defendants argue that the plaintiffs have not identified any actual law that has been retroactively applied to them. Second, the defendants contend that even if a new law was retroactively applied to the plaintiffs, the plaintiffs have not shown that the new practice significantly increased their punishments. (Def.'s Br. at 6.)

Under the United States Constitution, states are prohibited from enacting ex post facto laws. The ex post facto clause thus bars new laws which, by retroactive operation, increase the punishment for a crime after that crime has been committed. *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (citing *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925)).

In order to state an ex post facto claim, a prisoner must demonstrate that the retroactive procedural change created a "sufficient risk of increasing the measure of punishment attached to the covered crimes." *Garner v. Jones*, 529 U.S. 244, 249-50

(2000) (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995)). The United States Supreme Court has explained that "[w]hen the rule does not by its own terms show a significant risk," a prisoner must produce "evidence drawn from the rule's practical implementation . . . that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Garner*, 529 U.S. at 249-50. The evidence submitted by the prisoner "must focus on the consequence of the new practice on the sentence of the particular inmate bringing the challenge: [the petitioner] must show that as applied to his own sentence the law created a significant risk of increasing his punishment." *Glascoe v. Bezy*, 421 F.3d 543, 547-48 (7th Cir. 2005) (quoting *Garner*, 529 U.S. at 255). Thus, it is not enough to show that a new parole practice is harsher for a class of prisoners generally. *Glascoe*, 421 F.3d at 547-58.

In some instances, retroactive changes in law governing parole of prisoners may violate the ex post facto clause. *Garner*, 529 U.S. at 249-50. However, a parole officer's exercise of discretion does not violate the ex post facto clause. *Grennier v. Frank*, 453 F.3d 442, 444 (7th Cir. 2006). Wisconsin has adopted a discretionary parole regime. *See, e.g., Grennier v. Frank*, 453 F.3d 442, 444 (7th Cir. 2006); Wis. Stat. § 304.06(1)(b).

To prove an ex post facto claim in Wisconsin, then, the prisoner must show that the denial of parole resulted from a change in the statutory or administrative

scheme and not from an individual officer's exercise of discretion. *See id.* The court explained:

> Neither the ex post facto clause nor the due process clause has anything to say about how discretion will be exercised under an open-ended system . . . [incarcerated persons have] no more entitlement to a liberal release policy than [they] would have had to be sentenced by a judge who favored home confinement over prison. The constitutional interest is in the rules and statutes . . . rather than the attitudes of public officials who administer a discretionary system.

*Id.* at 445.

In a recent case, the United States District Court for the Western District of Wisconsin applied a similar line of reasoning to hold that an inmate could not show that "his continued imprisonment [was] the result of statutory or administrative changes as opposed to changes in how the parole commission legitimately exercise[d] its discretion." *Sanders v. Graham, et al.*, 2010 WL 2197038, at *1 (W.D. Wis. 2009). The plaintiff in *Sanders* submitted statistics on parole rates; however, the court found this evidence irrelevant because it did not explain why the plaintiff's parole was denied. *Id.* at *5. The Sixth Circuit Court of Appeals has adopted a similar stance: "[t]o the extent that plaintiffs have shown they face significant risk of increased punishment under the new parole regime, plaintiffs have not shown that this risk is attributable to statutory changes to the parole process and not to a change in the way the Board legitimately exercises its discretion." *Foster v. Booker*, 595 F.3d 353, 362 (6th Cir. 2010).

Here, taking the facts in the light most favorable to the plaintiffs, the plaintiffs have failed to show that the new parole laws created a sufficient risk of increasing their measure of punishment. *See Garner*, 529 U.S. at 255. Even if the plaintiffs had explicitly and correctly identified laws that were retroactively applied to them (which the defendants contend that they do not), they have failed to produce evidence showing that the denial of their parole was a direct result of any new statutory scheme. The plaintiffs argue that they have submitted statistics showing an overall increase in the length of prison sentences; however, as the *Glascoe* court noted, it is not enough to show that a new statutory scheme generally increased sentences of incarcerated persons. *Glascoe*, 421 F.3d at 547-48 (citing *Garner*, 529 U.S. at 255). Rather, the plaintiffs must show that the scheme created a sufficient risk of increasing *their own* prison sentences. *Glascoe*, 421 F.3d at 547-48 (citing *Garner*, 529 U.S. at 255). Even if evidence shows a general increase in prison sentences, such evidence does not prove that a particular plaintiff's denial of parole resulted from a change in the statutory scheme and not an individual officer's exercise of discretion. *See Sanders*, 2010 WL 2197038, at **1-5; *Foster*, 595 F.3d at 362.

Because the plaintiffs have failed to show that the denial of their parole resulted from a change in the statutory scheme, the defendants' motion for summary judgment must be granted.

**2. Motion to Compel Discovery**

The plaintiffs have also filed a motion to compel discovery. The plaintiffs contend that the defendants failed to produce various requested documents, including "all written statements, originals, or copies identifiable as updated Wis. Admin. PAC 1 Parole Release." (Pls.' Mot. to Compel Disc. at 2). The plaintiffs also requested "statistics for the average sentenced served." (Mot. at 3-4.) However, the plaintiffs apparently received this information from Milwaukee County Circuit Court Judge Richard Sankovitz and have submitted it to this court as evidence. (Ex. 112.) Other requests include "[a]ny and all disciplinary action taken against Commissioner Hart" and "[a]n inventory and copies of all inter-office memos . . . related to parole releases." (Mot. at 4-5.)

The defendants assert that the plaintiffs have not made efforts to resolve the dispute prior to bringing the motion, and have asked the court not to address this motion "until the parties have made efforts to resolve the discovery disputes." (Defs.' Resp. to Mot. at 1-2.)

Under Federal Rule of Civil Procedure 37, a party is permitted to file a motion to compel discovery where another party fails to respond to interrogatories or requests for production of documents. Although Fed. R. Civ. P. 37 permits the court to compel discovery, the party seeking such discovery must complete several steps before court intervention is appropriate. The party seeking discovery must first direct his request to the opposing party. If the opposing party fails to provide the materials,

the party must then consult with the opposing party and attempt to resolve their differences. Civ. L.R. 37 (E.D. Wis.). If the party is still unable to obtain discovery, he may file a motion to compel discovery with the court pursuant to Fed. R. Civ. P. 37. A motion to compel discovery pursuant to Rule 37(a) is addressed to the sound discretion of the trial court. *EEOC v. Klockner H & K Machines, Inc.*, 168 F.R.D. 233, 235 (E.D. Wis. 1996) (citation omitted).

In the present case, the plaintiffs have not shown that they have made a good-faith effort to communicate with the defendants regarding discovery. Moreover, some of the information requested, including the request for the new parole regulations under the Wisconsin Administrative Code, is part of the public database and can be found online or in a law library. The plaintiffs have additionally received some of the requested information from other sources. In any case, this issue is moot because the court has granted the defendants' motion for summary judgment. Thus, the court denies the plaintiffs' motion to compel discovery.

### 3.     Motions for Preliminary Injunctions

Finally, the plaintiffs have filed two motions for preliminary injunctions. First, the plaintiffs have requested a temporary restraining order to stop the state from applying post-1994 substantive parole policy directives. (Mot. for Prelim. Inj. at 1-2.) The plaintiffs filed a second motion stating that "[b]oth plaintiffs are still required to appear before the board and will suffer irreparable harm as the defendants will

continue to use substantive standards that were not in effect when they were convicted."  (Mot. for Relief at 1.)

To prevail on a motion for a preliminary injunction, a plaintiff shoulders the burden of establishing:  (1) a reasonable likelihood of success on the merits; (2) that there is no adequate remedy at law; (3) that she will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the public interest will not be harmed by the injunction.  *See Goodman v. Ill. Dep't of Fin. and Prof'l Reg.*, 430 F.3d 432, 437 (7th Cir. 2005); *see also Promatek Industries*, *Ltd. v. Equitrac Corp.,* 300 F.3d 808, 811 (7th Cir. 2002), and *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992).  The balancing for this test involves a sliding scale analysis:  the greater the plaintiff's chances of success on the merits, the less strong a showing the plaintiff must make that the balance of harm is in her favor.  *Storck v. Farley Candy Co.,* 14 F.3d 311, 314 (7th Cir. 1994).

Here, the plaintiffs have not shown a reasonable likelihood of success on the merits.  The court addressed the merits of the case above.  Taking the facts in the light most favorable to the plaintiffs, the defendants are entitled to judgment as a matter of law.  *See Anderson,* 477 U.S. at 248; *Celotex*, 477 U.S. at 324.  Thus, the plaintiffs cannot show a likelihood of success on the merits.

Therefore,

**IT IS ORDERED** that the defendants' motion for summary judgment (Docket #82) be and the same is hereby **GRANTED** and this action be and the same is hereby **DISMISSED** on its merits;

**IT IS FURTHER ORDERED** that the plaintiffs' motion for summary judgment (Docket #89) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the plaintiffs' motion to compel discovery (Docket #79) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the plaintiffs' motions for preliminary relief (Docket ##'s 88, 106) be and the same are hereby **DENIED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of August, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge